Good morning, if it pleases the court. Good morning. Jeff Callis, representing Mr. Tuttelman. At first blush, this looks like a standard Fourth Amendment case, encountered between the police and a traffic stop. But that's not what's in front of this court. What's in front of this court is a serious issue as to whether the full faith and credit clause of the Constitution and holdings of the Supreme Court in cases like Allen v. McCurry and Magara v. Warren City are going to be the law in the Ninth Circuit. The case revolves around a suppression hearing that occurred in a criminal prosecution. Well, now, if he had been, let's say if it had gone the other way, and he had been convicted of what he was charged with, then he'd be heck barred in this lawsuit, right? That's correct. But they, he only got convicted of a minor traffic offense or something, and so he wasn't heck barred. And then the issue is whether that motion to suppress is dispositive of qualified immunity. Well, actually, Your Honor, I think that there's a difference there. If you look at the Lombardi case, which comes from the Ninth Circuit, Lombardi said that a suppression does not have collateral effect on a single estoppel on qualified immunity as a whole. But the suppression finding a constitutional violation and a finding of facts associated with that constitutional violation would, in fact, have a collateral effect on the single issue of was there a constitutional violation. Counsel, I can understand how it can be argued it would have an estoppel effect on the same party who had been involved in the prosecution. But here, if a motion to suppress is granted, how are the officers who were sued in the 1983 action, how are they in privity with the government's prosecution that lost the motion to suppress? I'm glad you asked that question, Your Honor. California law in Miller v. Superior Court addressed the issue of the relationship or how intertwined cases must be. When there is a unity of purpose, then there is privity. So let's take a look at the facts in this case. Number one, Officer Luisi is the one who filed the complaint. He signed it and filed it. He's victim and he's also arresting officer. Within days of the arrest, Mr. Tuttleman filed a tort claimant, putting the city and the officers on notice that they were going to be sued. He also told the officers that he intended to seek legal address, a redress. The fact is that both the city and the officers and the prosecution understood that a guilty conviction would cause the legal civil actions to go away. Now, you have to – okay, but you still have to distinguish Davis v. Ide, which is a Ninth Circuit case, right? Yes. Which – and so how do you do that? Well, I think you have to turn around and recognize that the court has to use California law when it comes to privity. They have to use the law of the state and the federal court has to put itself in the state court's shoes. We also have to follow our own precedent, and Davis is our own precedent, right? That's correct, Your Honor, but in terms of determining – I mean, I'd like to – I'd love it if I didn't have to follow Ninth Circuit precedent a lot of times, but unfortunately, they keep telling me I have to. Well, for privity, unfortunately, the law of the land is that – or the law in this district is that you're going to have to use the state's rules on privity. As a matter of fact, Alan and McCurry, a Supreme Court case, said that. In California, we have – Do you have a single case that says a police officer is bound by a suppression hearing or, indeed, a not guilty verdict in a prosecution? Do you have a single California case – Yes, Lynch v. Glass, 44 Cadillac Third. Was that a case – I'm asking you about the precise facts of this case of a police officer being bound in a subsequent civil proceeding by a ruling that's made in a – in the course of a criminal prosecution. And that is Lynch v. Glass, 44 Cadillac Third, 943. We have the Miller v. the Superior Court case. Mr. Miller didn't involve a police officer. I'm asking you a – Miller involved an issue of the county and the state and whether they were – the county was somehow bound by an adverse decision against the state – against the – in a criminal case because the criminal case was prosecuted by the state of California. And I'm not sure that case is really correctly decided in light of other California – in other California cases. Is there a case that actually involved a police officer being held who is not a party to the criminal prosecution, who is not – in fact, one of the police officers here had no control over the prosecution. One of the two police officers, in fact, wasn't even called to testify, and I assume that decision was not made by him. It was made by the – by the district attorney. There's overwhelming authority in any – I mean, there are about a – you could probably cite seven or eight circuit court of appeals decisions applying state law, which are virtually unanimous in saying that the police officer, because he lacked control over the prosecution and was not actually a party to it, is not bound by the judgment. Well, you get into the control versus unanimity of interest, and although control is something that is looked at, in this case, we know that Officer Louisi is the one who initiated the action. That we know is a fact because his name is on the – Well, my police officers always initiate the – As an individual. But they don't get to charge someone. They can arrest someone, but then it has to go through the district attorney house to decide to charge them. So there, you know, there aren't any cases that cite them as complaining witnesses. It's not like a, you know, it's – it doesn't – they can arrest them, but it doesn't go any further than that in terms of charging if the DA feels that there's not sufficient evidence. I understand what the Court is saying, but in this case, remember, the officer is the victim, the officer is the witness. The officer at any time could have said – The officer is the victim of a battery. That's correct. And he could have even – first of all, no evidence was suppressed here to begin with. What happened was is that the suppression hearing was reversed. And the appellate court simply said that they agreed with the finding that the arrest was illegal. And they said that to the extent that they were resisting arrest and or a battery on an officer in the course of his duties, that might not be prosecutable because they agreed with the ultimate finding that there was no basis to attempt a frisk. But nothing – essentially, nothing was suppressed here. But, Your Honor, the fact that they had a finding that said that a constitutional violation occurred. Right. Once you have that, and that is the same issue that was going to be looked at in a – The question is on whom is that binding? Is it binding on the state? Is it binding on the city? And is it binding on the police officers? And almost all the cases invariably say it's not binding on the police officer. And I want to ask you one more question because we're going around in a circle. And it gets to the more basic issue. Is the reason that you're so – that you're pressing so much on the issue of collateral estoppel because there actually was reasonable suspicion to attempt the frisk? No, Your Honor. The court – Actually, that the California appellate court ruling was wrong because what it did was it examined each fact in isolation without looking at all of the facts as a whole. And you're afraid that if you don't have the benefit of issue preclusion, you would lose on the merits. Your Honor, the court at the appellate level determined that things were done that were unconstitutional and, in fact, did suppress the testimony of the officers as to certain initial activities. You know, I have to agree with Judge Corman in this. In looking at this, we don't know very much about the suppression hearing. And it could have been decided on credibility issues. You know, they maybe didn't believe the officers or whatever. But when you're analyzing something for qualified immunity, you know, most of us have seen a lot of search and seizure cases throughout the years. And when someone has been struggling with the police and that there – you know, there's been belligerent conduct and there's a bulge in their pants, that it – you know, it was – it seems somewhat shocking that you would – that an officer would not be able to check to see what that was. But, Your Honor, that was looked at in detail. And the appellate court and the trial court said that no officer in this particular situation had anything but rampant speculation. Well, that's what you're trying to say there. But did they say – did it really – did it say, did it end the inquiry that it was so clearly established that you can lose a motion to suppress and the court can rule differently than you do legally, but was – but the second prong of saussure is it has to be so, you know, obvious to a reasonable officer that they couldn't search someone that had been struggling with them and had a bulge in their pants. The issue was not the struggle. The issue was the initial pat-down, and the court said there was – There was no initial pat-down. What happened was, as I understand it, was there was an attempt by the police officers to pat down. The pat-down actually never took place until after the arrest for resisting arrest. So that the pat-down – we're not dealing with a pat-down. The argument that the California appellate court seemed to adopt was that it didn't – there was this attempt to pat down, and then he attempted to resist and he ran away. That's what happened here. Well, those are disputed facts, but the issue that was really raised in front of the appellate panel was, did the officers have reasonable suspicions, and the panel – the appellate panel said no. Yeah, but they make mistakes. The whole law is predicated on the fact that state courts make mistakes. That wasn't argued as a mistake, and under merger, what's not argued is merged into the decision. That is the – Why wasn't there reasonable suspicion here? Forget about qualified immunity and whether they were – whether the police officers could – a reasonable police officer could have been engaged in a good-faith mistaken belief that he could have. Why wasn't there reasonable suspicion here under all the circumstances, including the fact that he saw this bulge that he said was a wallet gun? It was pure speculation that it was a wallet gun. It wasn't speculation. It's always speculation when you see a bulge. The question is what, under all the circumstances, you could – inferences you can draw. It's a traffic violation for a minimal issue. It's Mr. Tuttleman was unhappy. Mr. Tuttleman, if Mr. – this is what always happens in these citizen police encounters. The citizen gets upset, and he starts acting in ways that ultimately lead to what happened here. But he didn't have his license. He turned around and started walking to the car. He didn't say, as far as I could recall, that he was walking back to the truck to get his registration. He was behaving in a boisterous way. It was late at night, and then he saw the bulge. I mean, I don't think you need to get the qualified immunity here. I think under the first prong is that there was no constitutional violation to begin with. But that's already been decided. No, but that's – the issue is whether the police officers and, indeed, in my judgment, even the city of – which is it? San Jose. San Jose is bound by that. Well, that – I believe that the Miller case, the Lynch case, and one or two others, as well as the – some federal cases, do bind them. But the – I don't think you get to them. Judge Gould, I want to ask you if you just – focus again. I want to make sure I've got a clear answer. On the question Judge Corman asked you at the outset, it's like, does the Lynch case, which you're citing, is it a case where a police officer is held to be collaterally stopped because of a ruling of unconstitutionality in a suppression hearing? It is a case in which a prior criminal action was held to be collateral estoppel in a later civil action. Against whom? Pardon? Against police officers. All right. Your time's expired. I'll give you one minute for rebuttal. Thank you, Your Honor. Good morning. And good morning. May it please the Court, Brian Hopper appearing on behalf of the city of San Jose, Officer Luisi, and Officer Bays. A great many issues were raised in the appeal, but I think I'll start off addressing the collateral estoppel issues. The city, of course, did cite the Davis – I'm sorry, if the court got the – Well, the court made a determination on the legal issue that the officers got qualified immunity on a certain aspect of the case, right? Yes, Your Honor. So the jury wasn't allowed to go into any of that. So if the court were wrong on that, wouldn't it be a different trial? Well, it would only be a different trial with respect to whether the jury could hear whether or not there was a constitutional violation with regards to the Pat search itself. But in this case, the jury was specifically instructed in jury instruction 18 that there was this attempt at Pat search, and that in this case they did not need to determine whether or not the Pat search was lawful. They were basically provided that as a background fact. All right. But if the court hadn't granted the officers qualified immunity on that, they would be determining that fact in the trial, right? Yes, unless the city had brought summary judgment on that issue as well, that there was not a violation as opposed to qualified immunity. All right. So you would have to show – if that was wrong, then it would have to be a harmless error analysis relative to the trial. I think that's correct, Your Honor. Yes. So it seems that counsel for Mr. Tuttleman has spent a lot of time on the qualified immunity issue, but he's approaching it from, you know, a privity issue. And so that's also an important issue for you to prevail on, right? Absolutely. And on that privity issue, I would like to address the Miller case they so heavily rely upon. And I believe it can be distinguished upon its facts. That involved a police officer who was convicted of raping a citizen, a young woman, and the woman subsequently sued the officer and the city, the city as the employer. And the issue in that case was whether the city was in privity with any party in the criminal cases for purposes of a collateral estoppel. And the court indeed held that the city was in privity with the prosecution, reasoning that it had interests in line with the prosecution in that case. And the court's reasoning is very illustrative here. The police officer for the city was charged with committing a serious felony while on duty, was brought to the bar of justice, and if found guilty, can no longer prey on members of the public in his official capacity. And the court determined that the city was as interested as the people of the state of California, the prosecutor, in concerning itself with a police officer who took advantage of and breached a substantial public trust. And those special facts explain the conclusion reached in that case and why it should effectively be limited. It's not true that the city is in privity with the district attorney's office in all cases. I submit that there really must be proof of this special interest. And, of course, in our case, Officer Luisi, Officer Bays were simply going to be witnesses. They were not defendants in the criminal case. Mr. Tuttleman was the one who was going to be prosecuted. There was not the special interest on the part of the city that existed in the Miller case. And I would also note that, of course, Miller was decided in 1985, and the Ingram v. City of Los Angeles case the city relies upon is 2006, far more recent. Tuttleman also contends that the city's reliance on Davis v. Ida and Ingram was misplaced in light of a number of federal cases, including Holcomb v. Hosmer, Ayers v. City of Richmond, and Heath v. Cass. And we submit he's wrong with regards to all of those. They can all be distinguished. Heath v. Cass, in that case, the court did not even reach the question of privity. In Ayers v. Richmond, a criminal defendant brought unsuccessful motions to suppress the fruits of searches and two criminal actions. He later sued police, and the court held that he was collaterally stopped from raising Fourth Amendment issues in the criminal action. And as to privity, Ayers was, of course, the very same party in both the criminal and the civil actions. In that case, there was no ruling that police or their employer of the city were in privity with the prosecution. Well, let me ask you this, and I think Judge Corman sort of explored this with Mr. Callis. If for purposes of this appeal, is this court free to conclude that the state court determination has no preclusive effect and that the pat-down search was, in fact, lawful? I think based upon all the facts, yes, Your Honor, that would be the city's position. There were a great many factors facing the officers in the field. I'm not going to recite them. All right. So if we didn't want to go there, and I'm not speaking for anyone. I'm just taking this through hypothetically. Okay? If we didn't want to decide whether it was lawful or unlawful or whatever, but just said there wasn't privity, it can be resolved on the prong two of saussure. Yes, Your Honor. But you're saying prong one, you prevail as well. That would be our position, yes. Based upon all of the factors, a court could conclude that, in fact, there was reasonable suspicion for the pat search to begin with. All right. I'm sorry. Go ahead. Thank you. I'll turn our attention to the Civil Code Section 52.1 argument they've made. In response to our argument that Mr. Tuttleman waived any right to claim that he should have been entitled to judgment as a matter of law on his Civil Code Section 52.1 claim relating to the unlawful search, he contends that he was unable to raise the claim before, given the state of the law. And when you look at the case he cites in support of that proposition, City of Simi Valley, you can recognize that that argument really doesn't hold water. That was a prior federal suit asserting Section 1983 and state law claims. And there was a finding in that federal action that officers had probable cause to arrest, that the subject was resisting at the time the decision was made to use tear gas against him, as to the Fourth Amendment claim that the police conduct was objectively reasonable and that there was no constitutional violation. The subsequent state suit was barred, given the finding in the federal action. There is no qualified immunity determination in that federal suit. There's a simple determination that there had been no constitutional violation to begin with. And that authority certainly would not have barred the appellant from asserting the 52.1 claim against officers based upon their prior grant of qualified immunity with regards to the search. But even if the Civil Code Section 52.1 claims had been barred against the individual officers, that would really have no bearing as to the City of San Jose. When you look at the Second Amendment complaint itself, at ER tab 41, page 660, it's clear that the Civil Code Section 52.1 claim was asserted against all of the defendants, including the city. And first, as is apparent from the joint pretrial order, which is at ASER 127, Tuttleman made absolutely no effort to maintain the search claim as to any of the defendants. Even if he genuinely believed that Officers Luisi and Bays were immune on the 52.1 search claim by virtue of the grant of qualified immunity, it didn't excuse his failure to assert that claim as to the City of San Jose. The City of San Jose, of course, does not enjoy qualified immunity. But wasn't he searched after the arrest? I don't understand. There was no – the frisk never took place. The search took place after he started resisting arrest, and they decided to arrest him. I don't understand what – it's important to separate out the fact that the frisk was – the stop and frisk was never consummated with a frisk. It was followed – the attempt to frisk was followed by his – to shortcut this – his effort to resist arrest and his battery on the police officer. So they – after they decided to arrest him, they frisked him. I don't – they – and that's when the search took place. There was nothing wrong with that. I think I would agree with the Court. There was a mere desire to conduct the pat search, which was then met with resistance. And it was only after Mr. Tuttleman was placed into custody that, in fact, the search did take place. I think unless the Court has any questions. I've got no questions. There do not appear to be additional questions. Thank you. Thank you. Let me see if I can respond quickly. The Court is faced with the problem that there was a determination that what preceded the attempt to frisk Mr. Tuttleman was a crime committed by the Supreme Court. That determination was made. But that's in the same – the appellate court said that your client could be prosecuted for battery, which at the minimum means they had probable cause to arrest him for battery. But that doesn't change. They said they couldn't be prosecuted for crimes in which the lawfulness of the police officer's conduct was an element. But when they remanded in their opinion, they clearly indicated that battery was okay and that he could be prosecuted for it. And the fact that they may not have been acting lawfully is not a defense to your client's – to a simple battery. So they had probable cause to arrest your client for battery. But for the fact that they didn't have – He lost on that. I understand. He lost on that in the appellate court. The appellate court said they didn't have a basis for doing a pat-down. Right. That's all. But on the issue of – they basically said that he could be prosecuted for battery. Because his actions were not – And you don't suppress any of the – and you couldn't suppress any of the events that preceded it. The – I mean, that's what happened here. They reversed the suppression order. They said your theory that they – that the testimony of the police officers as to what preceded the arrest you were arguing should be suppressed. They said, no, we reversed the order of the lower court. We're only holding that he can't be prosecuted for two offenses in which the lawfulness of the police officer's conduct was an element of the offense. But battery, the lawfulness of the police officer's conduct, is not an offense. Correct. So you lose, and they had probable cause to arrest your client and to search him. But if you look at the jury instruction in trial, it says that the officers acted lawfully in wanting to do the pat-down. That is an incorrect instruction because it was already determined that they weren't acting lawfully. With respect – Right. Well, I think your time has basically expired. Okay. So this matter will stand submitted. The court's just going to take a very brief recess, so if – for approximately five minutes, and then we'll be back to hear the final case.
judges: Korman, Gould, Callahan